UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ALEXANDER DOMBROWSKI,

                Petitioner,

v.

JEFFREY HOWARD,

                Respondent.

_____/

Case No. 2:25-cv-19

Hon. Hala Y. Jarbou

## <u>OPINION</u>

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Alexander Dombrowski is incarcerated with the Michigan Department of Corrections at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Following a jury trial in the Hillsdale County Circuit Court, Petitioner was convicted of one count of first-degree premeditated murder, in violation of Mich. Comp. Laws § 750.316(1)(a), one count of second-degree murder, in violation of Mich. Comp. Laws § 750.317, and possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On August 12, 2019, the trial court sentenced Petitioner to concurrent terms of life for the first-degree murder conviction and 40 to 60 years for the second-degree murder conviction, as well as a consecutive 2-year term of imprisonment for the felony-firearm conviction.

On January 29, 2025, Petitioner filed his habeas corpus petition, raising the following two grounds for relief:

I.     The testimony at the evidentiary hearing clearly demonstrates that [Petitioner] was denied his right to the effective assistance of counsel by counsel's failure to investigate and failure to present a defense at trial.

II.    *People v. Carpenter*, 464 Mich. 223, 627 N.W.2d 276 (2001)[,] was wrongly decided. [T]rial courts should be able to admit evidence depicting a mental deficiency short of legal insanity or incompetence to provide context for a defendant's actions.

(§ 2254 Pet., ECF No. 1, PageID.6–7.) Respondent contends that Petitioner's grounds for relief are meritless. (ECF No. 6.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.    Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> [Petitioner] was convicted of fatally shooting his father, Alex ("Al") Dombrowski, Sr., and his father's live-in girlfriend's brother, Tim Curtiss, at his father's farmstead in Camden Township on August 16, 2018. Prosecution witnesses identified [Petitioner] as the shooter. The defense did not deny that [Petitioner] was the shooter, but argued that he was guilty of the lesser offense of voluntary manslaughter on the basis of the strange behavior that he exhibited before, during, and after the crimes. The jury found [Petitioner] guilty as charged.
>
> Before trial, [Petitioner] had undergone two forensic evaluations and he was found competent to stand trial, capable of being criminally responsible, and not legally insane.

*People v. Dombrowski*, No. 352125, 2022 WL 17170186, at *1 (Mich. Ct. App. Nov. 22, 2022).

Jury selection for Petitioner's trial occurred on July 16, 2019. (Trial Tr. I, ECF No. 7-3.) Over the course of two days, the jury heard testimony from numerous witnesses. (Trial Tr. I and II, ECF Nos. 7-3, 7-4.) On July 17, 2019, the jury returned a guilty verdict. (Trial Tr. II, ECF No. 7-4, PageID.699–700.) Petitioner appeared before the trial court for sentencing on August 12, 2019. (ECF No. 6-5.)

After sentencing, Petitioner, with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals. Petitioner subsequently moved for a remand to the trial court for the appointment of medical experts and for a *Ginther* hearing[1] to develop his ineffective assistance of counsel claims. *Dombrowski*, 2022 WL 17170186, at *1. The court of appeals granted those motions on August 14, 2020. *Id.*

The trial court conducted the *Ginther* hearing on April 6, 2022. (*Ginther* Hr'g Tr., ECF No. 7-6, PageID.721.) During the hearing, the court heard testimony from Dr. Colin King, Dr. Dominic Borgialli, Petitioner's defense attorney Roderick Dunham, and Petitioner himself. (*Id.*, PageID.722.) Following testimony and argument, the trial court noted that it would be "giving a verbal opinion." (*Id.*, PageID.823.) The parties convened again on April 20, 2022, for the trial court's verbal opinion. (ECF No. 7-7.) The trial court concluded that counsel's conduct was not deficient and did not prejudice Petitioner and denied Petitioner's motion for a new trial. (*Id.*, PageID.835.)

On direct appeal, Petitioner, through counsel, raised the following grounds for relief: (1) counsel rendered ineffective assistance by (a) inadequately investigating Petitioner's mental state; (b) failing to present a voluntary intoxication defense; (c) failing to interview witnesses; (d) arguing for a voluntary manslaughter instruction but failing to present any evidence to support that theory; and (e) advising Petitioner not to testify; and (2) that *People v. Carpenter*, 627 N.W.2d 276 (2001), which held that a diminished-capacity defense was no longer viable in Michigan, was wrongly decided and should be revisited. *See generally Dombrowski*, 2022 WL 17170186. On November 22, 2022, the Michigan Court of Appeals rejected Petitioner's arguments and affirmed

---

[1]A hearing under *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), allows a criminal defendant to proffer facts or evidence in support of a claim of ineffective assistance of counsel. *See Ceasor v. Ocwieja*, 655 F. App'x 263, 266, 271 (6th Cir. 2016).

his convictions and sentences. *See id.* at *5. The Michigan Supreme Court denied Petitioner's application for leave to appeal on March 1, 2024. *See People v. Dombrowski*, 2 N.W.3d 455 (Mich. 2024). This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to

4

an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

### A.    Ground I—Ineffective Assistance of Counsel

As his first ground for relief, Petitioner contends that counsel rendered ineffective assistance by "fail[ing] to investigate and fail[ing] to present a defense at trial." (§ 2254 Pet., ECF No. 1, PageID.6.)

#### 1.    Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance

fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of

prevailing on a *Strickland* claim in the context of habeas and AEDPA" (citing *Harrington*, 562

U.S. at 102)).

Petitioner raised his claims of ineffective assistance of counsel on direct appeal, and the

Michigan Court of Appeals addressed them under the following standard:

> "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v. Solloway*, 316 Mich. App. 174, 187; 891 N.W.2d 255 (2016). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v. Nix*, 301 Mich. App. 195, 207; 836 N.W.2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id.* The effective assistance of counsel is presumed, and the burden is on the defendant to establish the contrary. *People v. Roscoe*, 303 Mich. App. 633, 644; 846 N.W.2d 402 (2014). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did." *People v. Gioglio (On Remand)*, 296 Mich. App. 12, 22; 815 N.W.2d 589 (2012) (citation omitted), *vacated in part on other grounds*, 493 Mich. 864 (2012). "[A] reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *Id.* at 22–23. The defendant has the burden of establishing the factual predicate of his ineffective-assistance-of-counsel claim. *People v. Douglas*, 496 Mich. 557, 592; 852 N.W.2d 587 (2014).

*Dombrowski*, 2022 WL 17170186, at *1. Although the court of appeals cited state law, the standard

is identical to the one set forth in *Strickland*. Moreover, *Solloway* identifies *Strickland* as the source

of the standard. *See Solloway*, 891 N.W.2d at 266.

The court of appeals' application of the correct standard eliminates the possibility that the

resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in

*Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests

that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not

"contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the court of appeals applied the correct standard, Petitioner can only

overcome the deference afforded state court decisions if the determinations regarding Petitioner's

ineffective assistance claims are unreasonable applications of *Strickland* or if the court of appeals'

resolutions were based on unreasonable determinations of the facts. 28 U.S.C. 2254(d).

The court of appeals addressed Petitioner's ineffective assistance claim under four

subparts: (1) counsel's alleged inadequate investigation of Petitioner's mental state; (2) counsel's

alleged failure to present a voluntary intoxication defense; (3) counsel's failure to interview

witnesses; and (4) counsel advising Petitioner to not testify on his own behalf. *See Dombrowski*,

2022 WL 17170186, at *2–5. The Court, therefore, will do the same to address Petitioner's

ineffective assistance claim.

## 2.    Failure to Adequately Investigate Petitioner's Mental State

Petitioner first contends that trial counsel failed to adequately investigate Petitioner's mental state. In his § 2254 petition, Petitioner suggests that despite substantial evidence regarding his use of methamphetamine, the two psychologists who examined Petitioner before trial did not recommend a neurological evaluation. (§ 2254 Pet., ECF No. 1, PageID.15.) Petitioner also contends that both psychologists attempted to contact counsel "regarding their respective interviews but were unsuccessful in speaking with him." (*Id.*) Petitioner faults counsel for "ma[king] no additional efforts to obtain additional testing of any kind—not even a medical examination!" (*Id.*) Overall, Petitioner believes counsel should have fully investigated "the psychological findings that [Petitioner] was not insane pursuant to Michigan law as foreclosing mitigation evidence." (*Id.*, PageID.18.)

Petitioner raised this argument on direct appeal, and the court of appeals rejected it, stating:

[Petitioner] has not overcome the strong presumption that trial counsel's performance was within the range of reasonable professional conduct. *Gioglio (On Remand)*, 296 Mich. App. at 22. The record supports that, after investigation, trial counsel reasonably determined that an insanity defense would not be viable. Trial counsel contemplated the viability of an insanity defense before the preliminary examination. As a result of trial counsel's motion, the trial court ordered that [Petitioner] be evaluated for criminal responsibility. The examiner concluded that [Petitioner] was criminally responsible, and thus [Petitioner's] mental status did not meet the requirements for legal insanity. Trial counsel explained that, hoping for a better outcome, he successfully acquired funds to obtain a second opinion from an independent examiner. Trial counsel further explained that, because he knew resources were very limited, he searched for the best expert he could. The examination took 4-1/2 hours and the examiner reviewed the files and other reports. The independent examiner, who had come "highly recommended," also concluded that [Petitioner] was criminally responsible. Thus, both forensic examiners reached the same conclusion. [Petitioner] has not presented an appropriate offer of proof to refute these findings, or to otherwise show that he was legally insane at the time of the offense to support that counsel's decision not to further pursue additional examinations was objectively unreasonable.

Further, absent an appropriate offer of proof, [Petitioner] is unable to establish that he was prejudiced in this regard. Defendant has effectively received a third and fourth evaluation as a result of this Court remanding this case for the appointment

10

of medical experts, both of whom examined [Petitioner] and testified at the *Ginther* hearing. Both experts opined that long-term use of methamphetamine and alcohol could negatively impact the brain and could support that [Petitioner] was mentally ill at the time of the offenses. One expert's diagnosis of [Petitioner] as having a "triple diagnosis," "[m]eaning substance abuse, substance dependency, mental illness and brain injury" would not, standing alone, have given [Petitioner] a legal insanity defense at trial. The second expert testified that [Petitioner] did not appear to be cognitively impaired. While both experts believed that a brain scan would have been useful to provide more information, the evidence was also clear that a brain scan was not the standard of care for someone presenting with substance abuse and schizophrenia. Thus, considering that this suggested course of action was not the medical standard of care, and that the defense had already received conclusions from two forensic examinations, counsel made a reasonable decision that further investigation was not necessary. *See Trakhtenberg*, 493 Mich. at 52. But even considering [Petitioner's] assertion that he suffered from "a mental illness," a defendant does not establish the affirmative defense of insanity by merely establishing that he suffered from mental illness. MCL 768.21a(1). Thus, [Petitioner] has not established the factual predicate for his claim. *Douglas*, 496 Mich. at 592. Because the record discloses that the viability of an insanity defense was investigated before trial, that there was no evidence to support that defense, and that [Petitioner] has not demonstrated that trial counsel was ineffective for not making further inquiries regarding his mental state, [Petitioner] has not established that trial counsel was ineffective on this basis. *Ericksen*, 288 Mich. App. at 201.

*Dombrowski*, 2022 WL 17170186, at *2.

Michigan law provides that

[l]egal insanity is an affirmative defense requiring proof that, as a result of mental illness or being mentally retarded as defined in the mental health code, the defendant lacks "substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or conform his or her conduct to the requirements of the law."

*People v. Carpenter*, 627 N.W.2d 276, 280 (Mich. 2001) (quoting Mich. Comp. Laws § 768.21a(1)). A defendant bears the burden of "proving the defense of insanity by a preponderance of the evidence." Mich. Comp. Laws § 768.21a(3). Mental illness alone, however, is a necessary, but not sufficient, requirement for an insanity defense. *See People v. Ramsey*, 375 N.W.2d 297, 302 (Mich. 1985). Therefore, under a "continuum of mental functioning," *see id.*, "[i]nsanity by definition is an extreme of mental illness." *People v. Fultz*, 314 N.W.2d 702, 704

(Mich. Ct. App. 1991). Essentially, "the statutes provide that all insane people are mentally ill but not all mentally ill people are insane." *See id.*

Here, the court of appeals' conclusion is entirely consistent with *Strickland*. The record reflects that even after four evaluations by medical experts—two before trial and two prior to the *Ginther* hearing—there was insufficient evidence that Petitioner suffered from a mental health issue that would rise to the level of supporting an insanity defense. Furthermore, while Petitioner faults counsel for not further investigating his mental state, including seeking a medical examination, Petitioner fails to provide any evidence that any further investigation by counsel would have resulted in another plausible defense related to Petitioner's mental health. *See Richardson v. Watwood*, No. , 2025 WL 1042341, at *3 (6th Cir. Mar. 5, 2025) (rejecting ineffective assistance claim based upon a failure to present an insanity or other mental health defense when two evaluations showed that the petitioner did not suffer "a mental health issues that would support an insanity or other defense related to his mental health"). Notably, while Petitioner appears to suggest that his substance use negatively impacted his mental health at the time of the murders, as discussed below, counsel was not ineffective for failing to pursue a voluntary intoxication defense.

### 3.    Failure to Present Voluntary Intoxication Defense

Petitioner also faults counsel for failing to present a voluntary intoxication defense at trial. Petitioner contends that counsel "conducted no investigation into meth psychosis." (§ 2254 Pet., ECF No. 1, PageID.16.) He also faults counsel for "only skimm[ing] the psychological reports generated prior to trial as the[y] contained significant information as to his client's background and disclosed his client's use of alcohol or methamphetamine." (*Id.*) According to Petitioner, "[a]lthough appointed shortly after [Petitioner's] arrest, [counsel] never requested his client be tested for drug use." (*Id.*, PageID.17.) Petitioner essentially suggests that counsel should not have

12

"accept[ed] at face value his client's initial denial of alcohol and methamphetamine use." (*Id.*, PageID.18.)

The court of appeals rejected Petitioner's argument, stating:

MCL 768.37 abolished voluntary intoxication as a defense, subject to one limited exception. Voluntary intoxication may be a defense to "a specific intent crime" if the defendant can establish "by a preponderance of the evidence, that he or she voluntarily consumed a legally obtained and properly used medication or other substance and did not know and reasonably should not have known that he or she would become intoxicated or impaired." MCL 768.37(2). [Petitioner] has not demonstrated that trial counsel was ineffective by failing to present a voluntary intoxication defense. Preliminarily, given the evidence presented at the *Ginther* hearing, counsel did not know that [Petitioner] had consumed alcohol or ingested drugs. [Petitioner] admitted that he did not inform trial counsel that he had ingested drugs or consumed alcohol. [Petitioner] also denied ingesting any drugs before the offenses during his forensic evaluations before trial. Trial counsel testified that he asked [Petitioner] whether he had used any drugs, including methamphetamine, and [Petitioner] insisted that he had not. [Petitioner] made it clear that his methamphetamine abuse was "long over with" by the incident date. Trial counsel chose to believe [Petitioner's] denial of drug use on the basis of counsel's experience with numerous clients who were methamphetamine users, and [Petitioner] did not appear to be one. Rather, when counsel met with [Petitioner] after his arrest, [Petitioner] was "very intelligent and very polite to me and knew what he was doing[,] what he was saying . . . . He did not seem like he was on drugs." Furthermore, [Petitioner] does not argue that he did not know or reasonably should not have known that he would become intoxicated or impaired when he voluntarily ingested drugs. Consequently, trial counsel's belief that [Petitioner] had not ingested drugs was objectively reasonable, and [Petitioner] has not demonstrated that a voluntary intoxication defense would have otherwise been available to him.

*Dombrowski*, 2022 WL 17170186, at *3.

The court of appeals' conclusion is entirely consistent with *Strickland*. Even if counsel should have been aware that Petitioner had consumed alcohol or used methamphetamine, Petitioner presents no clear and convincing evidence to overcome the court of appeals' conclusion that Petitioner did not know or reasonably should not have known that the voluntary use of alcohol and methamphetamine would cause him to become intoxicated or impaired. As such, Petitioner fails to overcome the court of appeals' conclusion that the voluntary intoxication defense would

not have been available for Petitioner to rely upon at trial. Counsel cannot be deemed ineffective for failing to advance a meritless defense. *See Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020). Accordingly, Petitioner is not entitled to relief with respect to this assertion of ineffective assistance.

### 4.    Failure to Interview Witnesses

In his § 2254 petition, Petitioner contends that counsel "made no attempt to interview J[ua]nita Dombrowski (see Affidavit of J[ua]nita Dombrowski)[,] Joe Curtiss[,] or any family members to obtain perspective on his client's aberrant behavior." (§ 2254 Pet., ECF No. 1, PageID.15.)

Petitioner has attached to his § 2254 petition a sworn declaration from Juanita Dombrowski dated June 14, 2020. (ECF No. 1-1, PageID.24–25.) Juanita is Petitioner's half-sister. (*Id.*, PageID.24.) Juanita stated that their parents were alcoholics, that she and Petitioner and their other siblings were physically abused by their parents, and that she and Petitioner were "also sexually abused by [their] parents' friends." (*Id.*) Juanita indicated that Petitioner's behavior began to change when their stepmother died in a car crash. (*Id.*) According to Juanita, Petitioner "had violent outbursts; he threw things and destroyed property. He began to use alcohol and drugs[,] primarily marijuana and later methamphetamine or crystal meth." (*Id.*)

Juanita averred that Petitioner "frequently displayed bizarre behavior." (*Id.*) When Petitioner was high, "his eyes became glassy. He was extremely paranoid and claimed he could hear voices in his head—voices that told him what to do. His moods would come and go and as his moods increased, he became more and more isolated." (*Id.*)

Juanita wrote that on the evening of the murders, Petitioner "looked like he was in a trance—like some sort of zombie." (*Id.*) "[N]either the Prosecutor nor [Petitioner's] trial attorney talked to [her] or other family members about [Petitioner] or about [their] testimony in court." (*Id.*)

Juanita believed she "could have offered some background on [Petitioner] and his behavior and could have given the jury a more complete picture of the situation but [she] was never contacted by anyone." (*Id.*) Juanita indicates that her statement "was drafted by [Petitioner's] appellate attorney . . . and it accurately reflects [her] statements to [appellate counsel] in [their] telephone conversations of May 1 and 13[,] 2020." (*Id.*, PageID.25.)

On direct appeal, the court of appeals rejected Petitioner's assertions, stating:

> At the *Ginther* hearing, trial counsel testified that he did not remember speaking with [Petitioner's] family members or other potential witnesses before trial. His most important trial strategy was to "bring out" as much as he could about how strange [Petitioner's] behavior was at the time [of the] incident, and he sought to accomplish this during his cross-examination of the prosecution witnesses, who were essential to the defense. The record shows that trial counsel followed this strategy.
>
> In opening statement, counsel encouraged the jurors to keep an open mind, stated that there would be some mitigating circumstances that would allow the jurors to find "a lesser verdict than first-degree murder," and stated that "you've already heard the first part about the possibly saying that the defendant was acting paranoid." During trial counsel's cross-examination of several witnesses, he asked about [Petitioner's] odd or strange behavior before and during the offenses. Further, the two witnesses whom defendant actually names, Joseph Curtiss (Tim's brother) and Juanita Dombrowski (defendant's sister), both testified at trial.
>
> Joseph testified that, before the incident, [Petitioner] came to his house and, at one point, [Petitioner] went on the deck and was acting "real paranoid," wandering throughout the home, peering out the windows, and called for his sister Juanita, who was not there, while standing on the deck. [Petitioner] retrieved Joseph's gun and, in response to Joseph's inquiry about why [Petitioner] had his gun, [Petitioner] stated that "he was a U.S. Marshal" with "orders to kill two people"; [Petitioner] did not identify the people who he was ordered to kill. Later, when he and Tim were summoned to Al's house, [Petitioner] was standing in the yard, holding a gun "like a solider." Juanita testified that [Petitioner] "said some strange things" to her. After hearing that her father had been shot, she drove to the house and saw [Petitioner], who was shirtless and standing by the mailboxes at the end of the driveway "in an assertive stance." Shortly thereafter, Juanita saw [Petitioner] standing outside. She stated that he was "just staring at the house blank, like no expression; he didn't seem excited or agitated or he seemed empty like just staring at the house." Juanita further testified, on cross-examination, that [Petitioner] "looked like he was in a trance," had a "blank stare," and he "looked like a zombie."

15

Additionally, at the outset of closing argument, trial counsel argued: "There's also a third option that the Prosecutor does not want you to do and that is voluntary manslaughter is a lesser offense." Trial counsel then detailed testimony from witnesses regarding [Petitioner's] strange behavior, and argued that his unusual behavior supported the lesser offense of voluntary manslaughter. Even if trial counsel did not interview certain witnesses before trial, the record discloses that argument and evidence about [Petitioner's] aberrant behavior was clearly presented to support the trial strategy. In other words, it is not reasonably probable that the outcome of the trial would have been different had trial counsel interviewed witnesses before trial. *Nix*, 301 Mich. App. at 207. Consequently, [Petitioner] cannot establish an ineffective-assistance-of-counsel claim on this basis.

*Dombrowski*, 2022 WL 17170186, at *3.

The court of appeals' conclusion is entirely consistent with *Strickland*. As an initial matter, with respect to Joe Curtiss and Petitioner's family members other than Juanita Dombrowski, Petitioner fails to explain how Curtiss would have provided any further testimony that was beneficial to his defense had counsel interviewed Curtiss before trial. Moreover, Petitioner fails to provide evidence that any unnamed family members were even available to testify at his trial, and he offers nothing but his own assertions to support the conclusion that counsel's failure to interview them resulted in prejudice to his defense. *See Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (affirming denial of an ineffective assistance claim based on counsel's failure to call witnesses where a petitioner did not "introduce [ ] affidavits or any other evidence establishing what they would have said"); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[T]he testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit; [a] defendant cannot simply state that the testimony would have been favorable, [as] self-serving speculation will not sustain an ineffective assistance claim." (footnote omitted)).

Likewise, Petitioner fails to provide any evidence to suggest that the outcome of his trial would have been different had counsel interviewed Juanita Dombrowski prior to trial. As correctly set forth by the court of appeals, Juanita testified about Petitioner's aberrant behavior during cross-

examination. Although Juanita suggests in her declaration that she could have provided "some background on Petitioner and his behavior, as well as "a more complete picture of the situation," Petitioner fails to demonstrate that evidence regarding Petitioner's childhood, as set forth in Juanita's declaration, would have been admissible during trial. Furthermore, Juanita waited until almost a year after Petitioner had been convicted to draft this declaration with assistance from Petitioner's appellate counsel. If Juanita believed that Petitioner "had been wrongly convicted and was languishing in prison, why wait?" *Ashmon v. Davis*, 508 F. App'x 486, 488 (6th Cir. 2012). This declaration, created after trial, is simply not sufficiently reliable to suggest that any further testimony from Juanita would have changed the outcome of Petitioner's trial. *See Milton v. Sec'y, Dep't of Corr.*, 347 F. App'x at 528, 531–32 (11th Cir. 2009). Likewise, while Juanita states that Petitioner's counsel never attempted to contact her prior to trial, there is no indication that Juanita ever tried to contact Petitioner's attorney herself.

In light of the foregoing, Petitioner fails to demonstrate that he was prejudiced by counsel not interviewing certain witnesses prior to trial. Accordingly, Petitioner is not entitled to relief with respect to this assertion of ineffective assistance of counsel.

### 5.  Advising Petitioner Not to Testify

Finally, Petitioner faults counsel for advising Petitioner not to testify "as part of 'our trial strategy.'" (§ 2254 Pet., ECF No. 1, PageID.16.) In a sworn declaration dated May 20, 2020, Petitioner states: "My attorney told me not to testify as he would argue manslaughter to the jury. I did not know what to do so I agreed not to tell my story or present any witnesses." (ECF No. 1-1, PageID.26.)

The court of appeals rejected Petitioner's argument on direct appeal, stating:

[Petitioner] has not demonstrated that trial counsel was ineffective for advising him against testifying and deciding not to call him as a witness. It is undisputed that [Petitioner] and trial counsel discussed whether [Petitioner] should testify.

17

Although trial counsel did not recall what specific reasons he gave to [Petitioner], testimony supports that there were strategic reasons for not having [Petitioner] testify. Trial counsel testified that a crucial part of his trial strategy was to show how "strange" [Petitioner's] actions were at the time of the incidents. Trial counseled reasoned that he could "make his case" by cross-examining the prosecution's eyewitnesses who observed [Petitioner's] behavior that night, and emphasizing how strange [Petitioner's] actions were. On the basis of trial counsel's interactions with [Petitioner], he found [Petitioner] to be "very intelligent and very polite," "knew what he was doing[,] what he was saying." Thus, calling [Petitioner] as a witness risked harming the argument that [Petitioner] was mentally unstable. As the trial court observed when denying [Petitioner's] motion for a new trial, "[i]f [trial counsel] wanted the jury to believe that his client exhibited odd behavior, asking a well-spoken defendant to testify, would belie that behavior." The decision whether to call [Petitioner] as a witness was a matter of trial strategy, *Russell*, 297 Mich. App. at 716, for which counsel has wide discretion, *People v. Heft*, 299 Mich. App. 69, 83; 829 N.W.2d 266 (2012), and [Petitioner] has not identified or offered any evidence to overcome the strong presumption of sound strategy in counsel's advice that [Petitioner] not testify. That counsel's strategy ultimately failed does not render his performance deficient. *Matuszak*, 263 Mich. App. at 61.

Further, there is no indication in the record that [Petitioner] expressed a desire to testify to counsel. Trial counsel testified that had [Petitioner] wanted to testify, he would have put him on the stand. [Petitioner] admitted that he made the final decision not to testify because he trusted trial counsel. Trial counsel testified that [Petitioner] made the final decision to not testify. The record from trial supports trial counsel's testimony. After the prosecution rested, trial counsel stated: "I've discussed it with him and I believe he wants to follow my lead that I suggested he not testify as part of our strategy." The trial court then questioned [Petitioner] at length, which included the following exchange:

> *The court*: Okay, now let[s] just give you your options, okay? I don't care what [trial counsel] says, okay? This is just between you and I right now, all right? So let me just advise you of your options.
>
> You understand you do have the right to testify and if you choose to testify you would be subject to cross-examination by the prosecution. That's one option. Do you understand that?
>
> *Defendant*: Yes, your Honor.
>
> *The court*: Okay, your other option is that you do not have to testify and I instructed the jury that now a number of times that you don't have to put on any of this; no obligation whatsoever.
>
> Now, if You do not testify there is an instruction that I will give that they can't use that against you in any manner, okay, because that is your Constitutional right. Do you understand that?

*Defendant*: Yes, your Honor.

*The court*: That's option Number 2.

Have you discussed these options with [trial counsel]?

*Defendant*: Yes, your Honor.

*The court*: Okay, is it your decision? I don't care about [trial counsel's] decision. I'm asking your decision [sic] choose not to testify?

*Defendant*: Yes, your Honor.

*The court*: Okay, and -- and you understand your two options?

*Defendant*: Yes, your Honor.

*The court*: Okay, and as a matter of trial strategy, you do not wish to testify; is that correct?

*Defendant*: Yes, your Honor.

*The court*: Okay, and this is your decision, not [trial counsel's]?

*Defendant*: Yes, your Honor.

[Petitioner] does not claim that he was ignorant of his right to testify, or that trial counsel coerced him into not testifying. Based on the foregoing, [Petitioner] cannot show that trial counsel was ineffective for advising him not to testify.

*Dombrowski*, 2022 WL 17170186, at *4–5.

In a criminal trial, the protections afforded under the Constitution for "due process of law" provide that "no one shall be condemned in his person . . . without an opportunity of being heard in his own defense." *Holden v. Hardy*, 169 U.S. 366, 390–91 (1898). A criminal defendant's right to testify on his own behalf "is a fundamental right." *United States v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007) (citing *Rock v. Arkansas*, 483 U.S. 44, 52–53 & n.10 (1987)). The right can be waived by a defendant only if done so knowingly and intelligently. *Id.* (citation omitted); *see Schneckloth v. Bustamonte*, 412 U.S. 218, 237 (1973) ("Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution

guarantees to a criminal defendant in order to preserve a fair trial."). The Supreme Court has determined that some waivers of fundamental rights are required to be taken on the record. However, while it remains advisable, "the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intelligently waived the right to testify, nor ensure that the defendant has waived the right on the record." *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000) (citing *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993)). To retain the right, "a defendant must 'alert the trial court' that he desires to testify" or that a disagreement with defense counsel exists. *Id.* (quoting *Pelzer v. United States*, No. 96-1195, 1997 WL 12125, at *2 (6th Cir. Jan. 13, 1997)).

Here, the court of appeals' determination turned principally on the resolution of factual issues, not legal issues. As noted above, a determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531. Here, Petitioner does not offer any new evidence, much less clear and convincing evidence, to rebut the court of appeals' findings.

The court of appeals' conclusion is entirely consistent with clearly established federal law. The record reflects that during jury selection, when the trial judge indicated the names of the witnesses that could be called by the parties, the judge did not mention Petitioner as a potential witness. (Trial Tr. I, ECF No. 7-3, PageID.331–32.) Petitioner fails to provide any evidence to suggest that he tried to alert either counsel or the trial judge at that time that he might wish to testify. Moreover, after the prosecution rested and the court took a short recess, the exchange set forth above occurred between Petitioner and the trial court. (Trial Tr. II, ECF No. 7-4, PageID.658–60.) Furthermore, the record is notably devoid of any offer of proof outlining Petitioner's purported

20

testimony. Thus, there is nothing in the record to support a claim that Petitioner's failure to testify resulted in any prejudice to him.

For the reasons set forth above, Petitioner fails to demonstrate that the court of appeals' rejection of his claim that counsel was ineffective for advising Petitioner not to testify on his own behalf is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief with respect to this assertion of ineffective assistance.

### 6.    Summary

In sum, Petitioner fails to demonstrate that the court of appeals' rejection of his various assertions of ineffective assistance of counsel is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief with respect to habeas ground I.

### B.    Ground II—*People v. Carpenter*

As his second ground for relief, Petitioner contends that the Michigan Supreme Court wrongly decided *People v. Carpenter*, 464 Mich. 223, 627 N.W.2d 276 (2001). (§ 2254 Pet., ECF No. 1, PageID.7.) According to Petitioner, "trial courts should be able to admit evidence depicting a mental deficiency short of legal insanity or incompetence to provide context for a defendant's actions." (*Id.*) Petitioner suggests that "courts should revisit the *People v. Carpenter* decision and find that its bright-line prohibition of mental defenses less than full legal insanity unconstitutionally infringe upon a defendant's right to present a defense to criminal charges." (*Id.*, PageID.19.)

Petitioner's argument that *People v. Carpenter* should be revisited is entirely premised upon state law and fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The decision of the state courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*,

546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Thus, the Michigan Supreme Court's holding in *Carpenter* is axiomatically correct on habeas review, and this Court has no authority to conclude that the Michigan Supreme Court wrongfully decided *Carpenter*.[2]

Accordingly, for the reasons set forth above, Petitioner is not entitled to relief with respect to habeas ground II.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.*

---

[2] In any event, in 2013, the United States Supreme Court declined to find a due process violation in a case where the *Carpenter* decision had been applied retroactively to preclude a Michigan criminal defendant from introducing a diminished capacity defense. *See generally Metrish v. Lancaster*, 569 U.S. 351 (2023).

*Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### **Conclusion**

The Court will enter a judgment denying the petition, as well as an order denying a certificate of appealability.

Dated: <u>November 24, 2025</u>                    <u>/s/ Hala Y. Jarbou</u>
                                                    HALA Y. JARBOU
                                                    CHIEF UNITED STATES DISTRICT JUDGE